## UNITED STATES *v.* AMERICAN BELL TELEPHONE COMPANY.

### APPEAL FROM THE CIRCUIT COURT OF APPEALS FOR THE FIRST CIRCUIT.

No. 745. Submitted October 28, 1895. — Decided November 11, 1895.

This court has appellate jurisdiction over a judgment rendered by a Circuit Court of Appeals of the United States in a suit brought by the United States in the Circuit Court of the Circuit, to cancel a patent for an invention.

Where the appellate jurisdiction of this court is described in a statute in general terms so as to comprehend the particular case, no presumption can be indulged of an intention to oust or to restrict such jurisdiction; and any subsequent statute claimed to have that effect must be examined in the light of the objects of the enactment, the purposes it is to serve and the mischiefs it is to remedy, bearing in mind the rule that the operation of such a statute must be restrained within narrower limits than its words import, if the court is satisfied that the literal meaning of its language would extend to cases which the legislature never intended to include in it.

MOTION to dismiss for want of jurisdiction. The case is stated in the opinion.

*Mr. James J. Storrow* and *Mr. Frederick P. Fish* for the motion.

*Mr. Attorney General, Mr. Causten Browne,* and *Mr Robert S. Taylor* opposing.

Mr. Chief Justice Fuller delivered the opinion of the court.

This is a suit by the United States to cancel a patent for an invention granted to the American Bell Telephone Company, as assignee of the inventor, Emile Berliner. On a hearing in the Circuit Court there was a finding and decree for the complainant. 65 Fed. Rep. 86. The cause having been taken to the Circuit Court of Appeals for the First Circuit, the decree of the Circuit Court was reversed, and it was ordered that the bill be dismissed. 68 Fed. Rep. 542. From this decree an appeal was taken by the United States to this court, which appellees now move to dismiss " for want of jurisdiction in this court to entertain it under the Circuit Court of Appeals act of March 3, 1891, c. 517, § 6, 26 Stat. 826, 828, for the reason that the case is a case arising under the patent laws."

The Supreme Court has appellate jurisdiction, under the Constitution, in all cases to which the judicial power extends, (other than those in respect of which it has original jurisdiction,) " with such exceptions and under such regulations as the Congress shall make." It was early held that in the passage of the judiciary act of 1789, Congress was executing the power of making exceptions to the exercise of appellate jurisdiction, and that the affirmative description of the cases to which the appellate power extended was to be understood as implying a negative on the exercise of such appellate power as was not comprehended within it, but that as this restriction rested on implication founded on the manifest intent of the legislature, it could be sustained only when that manifest intent appeared. *Durousseau* v. *United States*, 6 Cranch, 307.

Where the appellate jurisdiction is described in general terms so as to comprehend the particular case, no presumption can be indulged of an intention to oust or to restrict such jurisdiction ; and any statute claimed to have that effect must be examined in the light of the objects of the enactment, the purposes it is to serve and the mischiefs it is to remedy, bearing in mind the rule that the operation of such a statute must be restrained within narrower limits than its words

import, if the court is satisfied that the literal meaning of its language would extend to cases which the legislature never intended to include in it. *Petri* v. *Commercial National Bank of Chicago*, 142 U. S. 644, 650; *Brewer's Lessee* v. *Blougher*, 14 Pet. 178; *Reiche* v. *Smythe*, 13 Wall. 162, 164; *Market Company* v. *Hoffman*, 101 U. S. 112.

We inquire then whether the appellate jurisdiction of this court over controversies to which the United States are parties has been circumscribed by Congress in respect to the right of appeal.

By section 629 of the Revised Statutes, original jurisdiction was conferred upon the Circuit Courts (with a limitation as to the value of the matter in dispute) of all suits in equity and all suits at common law where the United States are petitioners or plaintiffs; all suits at law or in equity, arising under any act providing for revenue from imports or tonnage; all causes arising under any law providing internal revenue; all causes arising under the postal laws; and all suits at law or in equity arising under the patent or copyright laws of the United States. By the fifth paragraph of section 711, the jurisdiction of the courts of the United States of all cases " arising under the patent right or copyright laws of the United States" was declared to be exclusive.

By the act of March 3, 1875, c. 137, 18 Stat. 470, it was provided : " The Circuit Courts of the United States shall have original cognizance, concurrent with the courts of the several States, of all suits of a civil nature at common law or in equity, where the matter in dispute exceeds, exclusive of costs, the sum or value of five hundred dollars, and arising under the Constitution or laws of the United States, or treaties made, or which shall be made, under their authority, or in which the United States are plaintiffs or petitioners;" and this was repeated in substance, the differences being immaterial here, in the acts of March 3, 1887, c. 373, 24 Stat. 552, and August 13, 1888, c. 866, 25 Stat. 433.

And this court had appellate jurisdiction over all final judgments and decrees of any Circuit Court, or of any District Court acting as a Circuit Court, in civil actions

where the matter in dispute exceeded the sum or value of five thousand dollars. Rev. Stat. §§ 690, 691, 692; 18 Stat. 315.

The primary object of the act of March 3, 1891, c. 517, as stated in *American Construction Company* v. *Jacksonville Railway Company*, 148 U. S. 372, 382, " well known as a matter of public history, manifest on the face of the act, and judicially declared in the leading cases under it, was to relieve this court of the over burden of cases and controversies, arising from the rapid growth of the country, and the steady increase of litigation; and, for the accomplishment of this object, to transfer a large part of its appellate jurisdiction to the Circuit Courts of Appeals thereby established in each judicial circuit, and to distribute between this court and those, according to the scheme of the act, the entire appellate jurisdiction from the Circuit and District Courts of the United States."

By section five of this act, appeals or writs of error may be taken from the Circuit Court directly to this court in six specified classes of cases: where the jurisdiction of the court below is in issue; in prize causes; in cases of convictions of capital or otherwise infamous crimes; in cases involving the construction or application of the Constitution of the United States; in cases in which the constitutionality of any law of the United States, or the validity or construction of any treaty made under its authority, is drawn in question; in cases where the constitution or law of a State is claimed to be in contravention of the Constitution of the United States. Cases in which the United States are plaintiffs or petitioners are not enumerated as falling within either of these classes, nor are cases involving merely the construction of a law of the United States, those ordinarily arising under the heads of jurisdiction in respect of subjects-matter treated of in the sixth section.

By the sixth section, it is provided that the Circuit Courts of Appeals shall have appellate jurisdiction " in all cases other than those provided for in the preceding section of this act, unless otherwise provided by law." The Courts of Appeals, therefore, have appellate jurisdiction of all cases in which

original jurisdiction is conferred on the Circuit. Courts by reason of the United States being plaintiffs or petitioners. It is further provided by that section that "the judgments or decrees of the Circuit Courts of Appeals shall be final in all cases in which the jurisdiction is dependent entirely upon the opposite parties to the suit or controversy, being aliens and citizens of the United States or citizens of different States; also in all cases arising under the patent laws, under the revenue laws, and under the criminal laws and in admiralty cases." And the last paragraph of the section provides that "in all cases not hereinbefore, in this section, made final, there shall be of right an appeal or writ of error or review of the case by the Supreme Court of the United States where the matter in controversy shall exceed one thousand dollars besides costs." Judgments or decrees in cases in which the ground of jurisdiction of the Circuit Court is that the United States are plaintiffs or petitioners are not made final in terms, and such cases would fall within the last paragraph, unless restricted by the previous enumeration. And the contention is that the words "cases arising under the patent laws," must be held to operate as such restriction, and to render the judgments and decrees of the Circuit Courts of Appeals final, notwithstanding the existence of another distinct ground of jurisdiction in the Circuit Court, and that there would consequently be a right of appeal from a decree of a Circuit Court of Appeals dismissing a bill by the United States to cancel a patent for land, but none where the bill is one to repeal an invention patent.

In *United States* v. *Telephone Company*, 128 U. S. 315, 359, we said: "In the present case the United States are plaintiffs, and the bill asserts that the suit is one of a civil nature, and of equitable cognizance; and manifestly, if it presents a good cause of action, it arises under the laws and Constitution of the United States. It is, therefore, within the language both of the Constitution and of the statute conferring jurisdiction on the Circuit Courts." Two grounds to support the jurisdiction were thus indicated, but the question there was whether the judicial power of the United States under the Constitution extended to a suit by the United States to repeal a patent, and in that view

it was held that such a suit was a case arising under the laws of the United States, as had been previously adjudged many times by the court. In the language of appellee's counsel, "the judgments in the great contests reported in Cranch and Wheaton established that these words embraced, and therefore carried the judicial power to, every case wherein the existence or extent of a right purporting to be given by Federal authority and claimed by either party, became an essential ingredient."

Nevertheless, in respect of removals of suits from the state courts to the Circuit Courts under the acts of March 3, 1887, and August 13, 1888, we held, upon what was deemed the true construction of the statutes, that the right of removal was limited to cases in which it appeared from the plaintiff's statement of his own claim that his cause of action was one arising under the Constitution or laws of the United States. *Tennessee* v. *Union & Planters' Bank*, 152 U. S. 454; *Chappell* v. *Waterworth*, 155 U. S. 102.

In *Colorado Mining Company* v. *Turck*, 150 U. S. 138, it was ruled that when the original jurisdiction of a Circuit Court is invoked upon the sole ground that the determination of the question depends upon some question of a Federal nature, it must appear, at the outset, from the pleadings, that the suit is one of that character of which the Circuit Court could properly take cognizance at the time its jurisdiction was invoked; and that where the jurisdiction was invoked solely on the ground of diverse citizenship, the judgment of the Circuit Court of Appeals was final, although another ground for jurisdiction in the Circuit Court might be developed in the course of subsequent proceedings in the case. How the case might be if the plaintiff had invoked jurisdiction on two distinct grounds, one of them being independent of diverse citizenship, was not determined. Nor is it necessary to pass upon that question in this instance, for the motion may be disposed of upon the inquiry whether it was manifestly the intention of Congress to include such a case as that before us in the words " arising under the patent laws." . Now, actions at law for infringement, and suits in equity for infringement, for interference and to obtain

patents, are suits which clearly arise under the patent laws, being brought for the purpose of vindicating rights created by those laws, and coming strictly within the avowed purpose of the act, to relieve this court of that burden of litigation which operated to impede the disposition of cases of peculiar gravity and general importance. We are of opinion that it is reasonable to assume that the attention of Congress was directed to this class of cases, and that the language was used as applicable only to them; and that there is nothing in the objects sought to be attained and the mischiefs sought to be remedied by the act which furnishes foundation for the belief that Congress manifestly intended to place a limitation on the appellate jurisdiction of this court in a case such as this.

Moreover, in those cases, the subject-matter is everything in respect of jurisdiction, and the character of the parties nothing; while here, the character in which the plaintiffs sue and the nature of the case are inseparably blended.

In instituting this suit, the government appeared on behalf of the public, and, as it were, in the exercise of the beneficent function of superintending authority over the public interests, and the rule of construction in such cases is properly regarded as affected by considerations of public policy. It is upon the principle of public policy that the United States have been held not bound by statutes of limitation unless Congress has clearly manifested that they should be so bound. *United States* v. *Nashville &c. Railway*, 118 U. S. 120, 125; *Stanley* v. *Schwalby*, 147 U. S. 508; and the same rule is applicable to the exercise of the prerogative of *parens patriæ* inherent in the supreme power of every State, in respect of which it was observed by Mr. Justice Strong in *Savings Bank* v. *United States*, 19 Wall. 227, 237, that so much of the royal prerogative as belonged to the King in his position as universal trustee enters as much into the principles of our state as it does into the principles of the British government. Hence it was held in *United States* v. *Beebe*, 127 U. S. 338, that the United States are not bound by any statute of limitations, nor barred by laches of their officers, in a suit brought by them, as sovereign, to enforce a public right or to assert a public interest.

In *United States* v. *Telephone Company, supra,* it was de-cided that where a patent for a grant of any kind issued by the United States has been obtained by fraud, by mistake or by accident, a suit by the United States against the patentee is the proper remedy for relief, and that in this country, where there is no kingly prerogative but where patents for land and inventions are issued by the authority of the government, and by officers appointed for that purpose who may have been imposed upon by fraud or deceit, or may have erred as to their power, or made mistakes in the instrument itself, the appropriate remedy is by proceedings by the United States against the patentee.

We cannot impute to Congress the intention of narrowing the appellate jurisdiction of this court in a suit brought by the United States as a sovereign in respect of alleged miscar-riage in the exercise of one of its functions as such; deeply concerning the public interests; and not falling within the reason of the limitations of the act.

*Motion denied.*

MR. JUSTICE GRAY took no part in the consideration and disposition of this motion.