**BOARD OF COM'RS OF PAWNEE COUN-TY, OKL., et al. v. UNITED STATES.**

**UNITED STATES v. BOARD OF COM'RS OF PAWNEE COUNTY, OKL., et al.**

**Nos. 2719, 2726.**

Circuit Court of Appeals, Tenth Circuit.

Nov. 26, 1943.

Randell S. Cobb, of Oklahoma City, Okl. (L. N. Kimrey, of Pawnee, Okl., and Mac Q. Williamson and Horace Ballaine, both of Oklahoma City, Okl., on the brief), for appellants and cross-appellees.

Fred W. Smith, of Washington, D. C. (Norman M. Littell, of Washington, D. C., Whitfield Y. Mauzy, of Tulsa, Okl., and Vernon L. Wilkinson and Dwight D. Doty, both of Washington, D. C., on the brief), for appellee and cross-appellant.

Before PHILLIPS, HUXMAN, and MURRAH, Circuit Judges.

MURRAH, Circuit Judge.

The ultimate question presented by this appeal is whether certain lands held by the United States in trust for certain full-blood Pawnee Indians were exempt from Oklahoma ad valorem taxes by force of the Oklahoma Indian Welfare Act of June 26, 1936, 49 Stat. 1967, 25 U.S.C.A. § 501 et seq.

Colonel Moore, a full-blood restricted Pawnee Indian, was the owner of several tracts of restricted, but taxable, lands located in Pawnee County, Oklahoma, against which there were delinquent ad valorem taxes for the years 1937, 1938, and 1939. On October 19, 1939, Moore and his wife (also a full-blood Pawnee Indian), acting on the advice and with the consent of the Commissioner of Indian Affairs of the Department of Interior, by separate deeds, conveyed to the United States in trust for their three minor children, four separate tracts of lands located in Pawnee County, Oklahoma, and the deeds were thereafter approved by the Department of the Interior on August 7, 1940. No consideration passed for the conveyances, but the deeds were executed and delivered in pursuance of authority granted to the Secretary of the Interior by Section 1 of the Oklahoma Indian Welfare Act, which provides in part as follows: "That the Secretary of the Interior is hereby authorized, in his discretion, to acquire by purchase, relinquishment, gift, exchange, or assignment, any interest in lands, * * * including trust or otherwise restricted lands now in Indian ownership: Provided, That such lands shall be agricultural and grazing lands of good character and quality in proportion to the respective needs of the particular Indian or Indians for whom such purchases are made. Title to all lands so acquired shall be taken in the name of the United States, in trust for the tribe, band, group, or individual Indian for whose benefit such land is so acquired, and while the title thereto is held by the United States said lands shall be free from any and all taxes * * *."

Notwithstanding the conveyances to the government in the manner aforesaid, Pawnee County continued to assert the power to tax the lands in question, and did assess ad valorem taxes thereon for the taxable years 1940 and 1941, whereupon the United States brought this suit in the United States

District Court for the Northern District of Oklahoma to declare the lands nontaxable; to cancel the ad valorem taxes already assessed for the taxable years 1940 and 1941, and to permanently enjoin the assessment and collection of ad valorem taxes, on the grounds that the lands became nontaxable by the State of Oklahoma for the taxable year 1940 and thereafter, under and by force of the Oklahoma Indian Welfare Act.

The trial court held the lands were acquired by the Secretary of the Interior in pursuance of the Act, and that the property so acquired became nontaxable on August 7, 1940, the date on which the deeds were approved by the Department of the Interior, and not on October 19, 1939, when the deeds were executed and delivered by the grantors, as contended by the government. Thus, the court specifically held that the lands were subject to state taxation for the taxable year 1940, and nontaxable for the year 1941 and thereafter. Pawnee County appeals from the judgment of the court holding the lands nontaxable and enjoining the assessment and collection of the taxes, from and after the taxable year 1941, while the United States has cross-appealed from that part of the judgment of the court holding the lands taxable for the year 1940, on the theory that the approval by the Department of the Interior on August 7, 1940 related back to the date of the execution and delivery of the deeds on October 19, 1939. Board of County Commissioners v. Seber, 10 Cir., 130 F.2d 663, affirmed 318 U.S. 705, 63 S.Ct. 920.

The jurisdiction of the trial court rests upon the provisions of Paragraph 1, Section 24 of the Judicial Code, 28 U.S.C.A. § 41(1), which provides in part that district courts shall have original jurisdiction of "all suits of a civil nature, at common law or in equity, brought by the United States, or by any officer thereof authorized by law to sue." The same paragraph also confers jurisdiction on the federal courts of suits brought by private citizens where the matter in controversy exceeds, exclusive of interest and costs, the sum or value of $3,000 and arises under the Constitution and laws of the United States, or is between citizens of different states with the requisite amount in controversy. The jurisdiction thus conferred has its source in Section 2, Article III of the Constitution of the United States, which provides that the judicial power of the United States shall extend to all controversies to which the United States is a

party, and it extends to suits brought by the United States, either on its behalf, or as guardian to enforce a right or to protect the property of its Indian wards. McCarty v. Hollis, 10 Cir., 120 F.2d 540; Barnett v. United States, 9 Cir., 82 F.2d 765; Bryan County v. United States, 10 Cir., 123 F.2d 782, certiorari denied 315 U.S. 819, 62 S.Ct. 907, 86 L.Ed. 1216; Board of County Commissioners v. Seber, supra. But Pawnee County asserts that the Federal District Court was ousted of jurisdiction to enjoin the assessment and collection of the tax by the restrictive provisions of the Amendment of August 21, 1937, which amended Paragraph 1, Section 24 of the Code as follows: "Notwithstanding the foregoing provisions of this paragraph, no district court shall have jurisdiction of any suit to enjoin, suspend, or restrain the assessment, levy, or collection of any tax imposed by or pursuant to the laws of any State where a plain, speedy, and efficient remedy may be had at law or in equity in the courts of such State." Although the language used to restrict the federal court jurisdiction is broad and unequivocable, it does not by its terms specifically mention the United States, and it is seriously questioned whether the restrictive provisions of the Amendment were intended to apply to suits brought by the United States. Dollar Savings Bank v. United States, 19 Wall. 227, 239, 22 L.Ed. 80; United States v. American Bell Telephone Co., 159 U.S. 548, 554, 16 S.Ct. 69, 40 L.Ed. 255; United States v. Greene, 26 Fed.Cas. page 33, No. 15,258. Certainly the vice sought to be corrected by the legislation did not arise out of this class of cases, but was aimed at abuses arising out of injunction suits brought by private citizens, wherein federal court jurisdiction was based upon the requisite amount in controversy, "and arising under the Constitution and laws of the United States"; or was based purely upon the diversity of citizenship clause contained in the same paragraph of the Judicial Code. Senate Rep. 1035, 75th Congress; House Rep. 1503, 75th Congress.

We deem it unnecessary however to resolve this particular question, since we are convinced that a plain, speedy and efficient remedy at law or in equity in the courts of the state is not available to the United States. The remedies afforded for the abatement of taxes imposed by the State of Oklahoma, and which the County contends are plain, speedy, and efficient for the

United States, are found in the Oklahoma Statutes which authorize the county boards of equalization "to cancel assessments of property not taxable * * *." Laws 1941, p. 323, Sec. 40, 68 O.S.A. § 15.40, and which authorized appeals from orders of the boards to the state district courts and Supreme Court. Laws 1941, p. 324, Sec. 42, 68 O.S.A. § 15.42. But the full payment of the taxes assessed against the property of any taxpayer, who has appealed from an order of the board of equalization, must be paid at the time and in the manner provided by law as a condition precedent to the appeal, Laws 1941, p. 326, Sec. 48, 68 O.S.A. § 15.48, and the remedy thus afforded is exclusive—"Equitable remedies shall be resorted to only where the aggrieved party has no taxable property within the tax district of which complaint is made." Laws 1941, p. 327, Sec. 49, 68 O.S.A. § 15.49. Flower Hospital v. Board of Equalization, Okl.Sup., 127 P.2d 177. Moreover, where the illegality of the tax is alleged to arise by reason of some action from which the laws provide no appeal, the aggrieved person shall pay the full amount of the tax at the time and in the manner provided by law, and shall bring suit to recover the amount so paid. Laws 1941, p. 327, Sec. 50, 68 O.S.A. § 15.50. Flower Hospital, Inc., v. Board of Equalization, supra; Black v. Geissler, 58 Okl. 335, 159 P. 1124; Duling v. First National Bank, 71 Okl. 98, 175 P. 554; Brown v. Hennessey State Bank, 78 Okl. 141, 189 P. 355.

 It is not shown that any funds are available which could be lawfully used to pay the taxes under protest, if the Secretary were so authorized. It follows therefore that a Congressional appropriation might be necessary in order to provide funds with which to pay the taxes before appeal could be taken from a ruling of the board of equalization, or a suit brought to recover the taxes as provided by state law. Any remedy at law which requires an appropriation as a condition to relief is neither adequate nor efficient. City of Springfield v. United States, 1 Cir., 99 F. 2d 860; United States v. Rickert, 188 U.S. 432, 444, 23 S.Ct. 478, 47 L.Ed. 532. This suit involves the application and construction of a federal act, and the taxability of the land in question depends upon the construction and application to be given to that Act. Obviously, it was not the Congressional intention, purpose, or design to relegate the United States to the remedies afforded in the state courts for the adjudication of rights and remedies granted by force of federal law, and this is especially true when, as here, the United States appears in its capacity as a guardian of the rights of its Indian wards. See United States v. Osage County, 251 U.S. 128, 40 S.Ct. 100, 64 L.Ed. 184; Bryan County v. United States, supra; Board of County Commissioners v. Seber, 10 Cir., 130 F.2d 663, affirmed 318 U.S. 705, 63 S.Ct. 920; Carpenter v. Shaw, 280 U.S. 363, 369, 50 S.Ct. 121, 74 L.Ed. 478. Without more, it is plain that the remedy afforded the United States in the courts of the state is neither plain, speedy, nor efficient, and the federal district court had jurisdiction to hear and determine the controversy.

 On the merits, it is urged that Section 1 of the Oklahoma Indian Welfare Act is invalid as an unconstitutional delegation of legislative power; that the Act "has delegated to the Secretary of the Interior not the power to enforce the law, but to determine in effect what the law shall be". It is of course true that Congress may not, within the constitutional framework, grant lawmaking power to the executive branch of the government, to be exercised under the guise of administrative discretion. In other words, Congress must prescribe the standards or declare the legislative policy which is to be administered by the executive. It must be conceded, however, that within reasonable limits, Congress may delegate to the executive, authority to exercise appropriate discretion in the administration and effectuation of the declared Congressional policy. Kansas Gas & Electric Co. v. Independence, 10 Cir., 79 F.2d 32, 100 A.L.R. 1479; Schechter Poultry Corp. v. United States, 295 U. S. 495, 55 S.Ct. 837, 79 L.Ed. 1570, 97 A.L. R. 947; Panama Refining Co. v. Ryan, 293 U.S. 388, 55 S.Ct. 241, 79 L.Ed. 446; Opp Cotton Mills v. Administrator, 312 U.S. 126, 144, 657, 61 S.Ct. 524, 85 L.Ed. 624. The discretionary power granted to the Secretary to acquire lands, and to hold the same in trust for the benefit of the Indian is not limitless. It is subject to the Congressional command that the lands shall be "agricultural and grazing lands of good character and quality in proportion to the respective needs of the particular Indian." Obviously, Congress cannot select the particular lands, or the individual Indian who is to be the beneficiary. Historically, the Secretary of the Interior has been the del-

egated arm of the Federal government to act as the guardian of the Indian ward; to administer the affairs of its Indians, and to that end has been granted wide discretionary powers in the enforcement of the declared Congressional policy. R.S. 441, 5 U.S.C.A. § 485; Section 1 of the Act of May 27, 1908, 35 Stat. 312; United States v. Rickert, 188 U.S. 432, 23 S.Ct. 478, 47 L.Ed. 532; West v. Hitchcock, 205 U.S. 80, 85, 27 S.Ct. 423, 51 L.Ed. 718; Anicker v. Gunsburg, 246 U.S. 110, 38 S.Ct. 228, 62 L.Ed. 603; Buster v. Wright, 8 Cir., 135 F. 947; Board of County Commissioners v. Seber, supra; Creek Nation v. United States, 318 U.S. 629, 639, 63 S.Ct. 784. Cf. United States v. Barnsdall Oil Co., 10 Cir., 127 F.2d 1019. See also Cohen, Handbook of Federal Indian Law, "The Range of Administrative Powers", 100 et seq.

▌ Assuming the Act to be a valid delegation of power to the Secretary, the County next argues that the Secretary has not exercised that power in accordance with the declared legislative policy. In effect, it is contended that the lands in question are not agricultural and grazing lands of good character and quality in proportion to the respective needs of the particular Indian, for whose benefit they are now held, but rather it is insisted that the dominant purpose of the entire transaction was to effect a nontaxable status of otherwise taxable lands belonging to Colonel Moore, and the Welfare Act was merely a handy device by which the Secretary was enabled to accomplish that result. Undoubtedly, the Indians for whose benefit the lands were acquired are within the ambit of the Act. Congress did not limit the scope of the Act to any particular tribe or class of Indians; neither did it attempt to designate the lands to be acquired, beyond the qualification that they should be agricultural and grazing lands in proportion to the respective needs of the particular Indian. The selection of the lands to be acquired is an administrative detail which must necessarily be left to the exercise of the Secretary's discretion, and the courts are not authorized to substitute their judgment for that of the Secretary, unless it clearly appears that he arbitrarily exercised his discretion in a manner wholly unrelated to the legislative design. Cf. Dow v. Ickes, 123 F.2d 909, certiorari denied 315 U.S. 830, 62 S.Ct. 912, 86 L.Ed. 1224; City of Oakland v. United States, 9 Cir., 124 F.2d 959.

▌ The trial court has found that the lands in question were agricultural and grazing lands of good character and quality in proportion to the respective needs of the particular Indians, and from the stipulation before us, we are unable to hold that the Secretary has exercised his discretion in a manner wholly inconsistent to the legislative purpose. It may be conceded that the primary purpose of the Indian Department was to effect a nontaxable status of taxable lands belonging to Colonel Moore, yet, if in accomplishing that result, the Secretary acted in accordance with constitutionally delegated power, we are not at liberty to annul his actions merely because he may have been initially prompted by some purpose not within the contemplation of the Act. Furthermore, we are unable to say from this record that the Secretary was not actuated by a desire to protect the lands from loss by tax foreclosure and sale and thus preserve the same for the benefit of the Indians for whom the lands were acquired. If this be so, both the purpose and the result are wholly within the legislative design. It should be noted that as respects Indian affairs, the United States, acting through the Secretary of the Interior, is guardian of the Indian wards, and in the discharge of this duty, the Government acts in a proprietary capacity, and its discretion, when exercised in respect to an Indian ward, is less limitable than an ordinary Congressional delegation of power. Cohen Handbook of Federal Indian Law, "The Range of Administrative Powers", 100 et seq. The question whether the Secretary should have been authorized to acquire the lands in question, and thereby remove them from the taxing power of the State of Oklahoma, is a matter of policy for the consideration of Congress, and not the courts. Board of County Commissioners v. Seber, supra.

▌ The remaining question, raised by cross-appeal, is what year did the lands become nontaxable—whether 1940 or 1941? The deeds of conveyance were executed and delivered to the Government on October 19, 1939, on the advice and consent of the Commissioner of Indian Affairs of the Department of the Interior. It is shown on this record that the Commissioner of Indian Affairs not only selected the lands which were to be conveyed, but prescribed the form of deed, and the local tribal superintendent was in full charge of all details incident to the consummation of the entire

transaction. Consequently, when on January 1, 1940, the taxable status of the land became fixed for the ensuing year beginning July 1st, Colonel Moore had, with the advice and consent of the Commissioner of Indian Affairs divested himself of title to the lands, and the United States held title thereto for the benefit of the Indian wards, subject only to the formal approval of the Department of the Interior, which did not occur until August 7, 1940. In these circumstances, we hold that the formal approval by the Department of Interior, related back to the date of the execution of the deeds. See Board of County Commissioners v. Seber, supra; Cf. Lykins v. McGrath, 184 U.S. 169, 22 S.Ct. 450, 46 L.Ed. 485.

The judgment of the trial court is modified accordingly, and as modified affirmed.