**ILLINOIS CENTRAL RAILROAD COM-PANY, Appellant,**

v.

**William P. ROGERS, Attorney General of the United States, as Successor to the Alien Property Custodian, Appellee.**

**No. 14127.**

United States Court of Appeals
District of Columbia Circuit.

Argued Feb. 10, 1958.

Decided Feb. 27, 1958.

Mr. Howard D. Koontz, Chicago, Ill., of the bar of the Supreme Court of Illinois, pro hac vice, by special leave of court, with whom Mr. R. Granville Curry, Washington, D. C., was on the brief, for appellant.

Miss Marbeth A. Miller, Atty., Dept. of Justice, with whom Messrs. George B. Searls, and Irwin A. Seibel, Attys., Dept. of Justice, were on the brief, for appellee.

Before FAHY, BASTIAN and BURGER, Circuit Judges.

BASTIAN, Circuit Judge.

This is an appeal from a judgment of the United States District Court granting appellee's motion for summary judgment in a suit filed by the Attorney General, as successor to the Alien Property Custodian, to enforce a vesting order under the Trading with the Enemy Act. 40 Stat. 411, as amended, 50 U.S.C.A.Appendix, § 1 et seq. 1. The facts are not in dispute and may be briefly summarized as follows:

Mitsubishi Shoji Kaisha, Ltd. (hereinafter referred to as Mitsubishi), a Japanese corporation, in March 1941 made shipments of lubricating oil over the lines of Illinois Central Railroad Company (hereinafter referred to as the Railroad). The Railroad assessed certain charges on these shipments, resulting in an overcharge against Mitsubishi in the amount of $1,827.78. Thereafter, and on May 19, 1941 (revised at appellant's suggestion on November 1, 1941), Mitsubishi filed a claim for the amount of the overcharge. As of the time of the declaration of war with Japan on December 8, 1941, the claim had not been paid although its correctness was not and is not now disputed.

On August 28, 1942, the Alien Property Custodian, predecessor of the Attorney General, issued Vesting Order No. 133 vesting in the Alien Property Custodian, for the benefit of the United States pursuant to the Trading with the Enemy Act, all property of any nature whatsoever owned or controlled by Mitsubishi. The order contained the usual provision that the property so vested was to be held, used, administered, liquidated, sold or otherwise dealt with in the interest of and for the benefit of the United States. There was an amendment to the vesting order on August 30, 1951, which is not material to the disposition of this case.

On November 3, 1953, the then Attorney General, as successor to the Alien Property Custodian, made demand on the Railroad for payment. The Railroad, on September 22, 1954, gave notice that the claim was denied on the ground that it was barred by § 16(3) (c) of the Interstate Commerce Act. 49 U.S. C.A. § 16(3) (c).[1] Suit was filed for the said sum of $1,827.78 in the District Court on December 10, 1956, and on June 11, 1957, summary judgment was granted against the Railroad. This appeal followed.

Appellant argues that when war was declared in December 1941 the limitation provided in § 16(3) (c) had run against Mitsubishi for 8½ months; that the rights of Mitsubishi were acquired by the Alien Property Custodian on August 28, 1942; and that, therefore, since the cause of action arose in March 1941 and suit was not filed until December 10, 1956, the claim is barred under § 16(3) (c). The contention is that the Alien Property Custodian acquired no greater right than that possessed by Mitsubishi, that § 16(3) (c) does not except suits by the United States, and that "appellee's claim is barred even though it be found that the statute was tolled from December 8, 1941, to April 29, 1952," (the date on which the Treaty of Peace with Japan terminated wartime emergencies).

When war was declared, and when the vesting order was issued, Mitsubishi had a valid claim against the Railroad. After the vesting order Mitsubishi could not proceed to recover on its claim within the time limited by § 16(3) (c), and no action could have been taken by the Alien Property Custodian until the time of the vesting order. Appellant contends, however, that § 16(3) (c) of the Interstate Commerce Act contains no exceptions and has been construed to include suits by the United States in cases where the United States was the shipper. It may be noticed here that there have been no court decisions directly holding that the United States *as shipper* is bound by the provisions of § 16(3) (c), although the Interstate Commerce Commission has so held.[2] It may well be that the United States, having, as the expression has been used, "stooped" to contract with a subject, is bound by the same rules by which other persons so dealing may be bound; but that is not this case. As a matter of fact, it has been held that paragraph (3), added to § 16 of the Interstate Commerce Act, does not apply to an action by the Director General of Railroads to recover demurrage charges accrued to the United States during the period of federal control of railroads. Dupont de Nemours & Co. v. Davis, 1924, 264 U.S. 456, 44 S.Ct. 364, 68 L.Ed. 788, in which the Supreme Court said:

"The action was brought more than three years after the cause of action accrued. The statute relied upon as a bar is section 424, Transportation Act 1920, 41 Stat. 491, 492, * * * being a new paragraph added to section 16 of the Interstate Commerce Act by way of amendment. The pertinent words are: '(3) All actions at law by carriers subject to this act for recovery of their charges, or any part thereof, shall be begun within three

---

1. "(3) *Limitation of actions.*

　　*　　*　　*　　*　　*

　"(c) For recovery of overcharges action at law shall be begun or complaint filed with the commission against carriers subject to this chapter within two years from the time the cause of action accrues, and not after, subject to subdivision (d) of this paragraph, except that if claim for the overcharge has been presented in writing to the carrier within the two-year period of limitations said

period shall be extended to include six months from the time notice in writing is given by the carrier to the claimant of disallowance of the claim, or any part or parts thereof, specified in the notice."

2. United States v. A. & W. Rwy. Co., 1955, 294 I.C.C. 5; United States v. Southern Rwy. Co., 1952, 286 I.C.C. 203; United States v. Director General, 1923, 80 I.C.C. 143.

years from the time the cause of action accrues, and not after.' It is insisted that the United States—or the Director General, representing the United States—is included in the provision as a carrier subject to the act. Our opinion is otherwise." Id., 264 U.S. at pages 459–460, 44 S.Ct. at page 365.

The Court said further:

"In taking over and operating the railroad systems of the country, the United States did so in its sovereign capacity, as a war measure, 'under a right in the nature of eminent domain,' North Carolina R. Co. v. Lee, 260 U.S. 16, 43 S.Ct. 2, 67 L.Ed. 104; Missouri Pacific R. Co. v. Ault, 256 U.S. 554, 41 S.Ct. 593, 65 L.Ed. 1087; Northern Pacific Ry. Co. v. State of North Dakota, 250 U.S. 135, 39 S.Ct. 502, 63 L.Ed. 897; In re Tidewater Coal Exchange, [2 Cir.,] 280 F. 648, 649; and it may not be held to have waived any sovereign right or privilege unless plainly so provided. Moneys and other property derived from the operation of the carriers during federal control, as we have seen, are the property of the United States. Section 12, 40 Stat. 457. An action by the Director General to recover upon a liability arising out of such control is an action on behalf of the United States in its governmental capacity, (Chesapeake & Delaware Canal Co. v. United States, 250 U.S. 123, 126, 39 S.Ct. 407, 63 L.Ed. 889; In re Tidewater Coal Exchange, supra) and, therefore, is subject to no time limitation, in the absence of congressional enactment clearly imposing it. United States v. Nashville, C. & St. L. Ry. Co., 118 U.S. 120, 125, 6 S.Ct. 1006, 30 L.Ed. 81; United States v. Whited & Wheless, Ltd., 246 U.S. 552, 561, 38 S.Ct. 367, 62 L.Ed. 879. Statutes of limitation, sought to be applied to bar rights of the government, must receive a strict construction in favor of the government. United States v. Whited & Wheless, Ltd., supra." Id., 264 U.S. at page 462, 44 S.Ct. at page 366.

■ The right of the Government in this case is governed not by § 16(3) (c) of the Interstate Commerce Act but by the Trading with the Enemy Act. The right of the Government arises not under the commerce clause of the Constitution but under Article One, Section 8, of the Constitution, from which Congress derives it war powers. It is a right which the Government has exercised to take property from alien enemies, to prevent its use for the benefit of the enemy and to make such property available for aiding the national defense and meeting the costs of war. Seizure under the Trading with the Enemy Act divests enemy owners of all right to the property seized and vests absolute title in the United States. Cummings v. Deutsche Bank, 1937, 300 U.S. 115, 57 S.Ct. 359, 81 L.Ed. 545.

■■ This then is simply a case of the Government seeking possession of property to which it has title in its own right, and in these circumstances the United States is not bound by limitations or barred by laches. Chesapeake & Delaware Canal Co. v. United States, 1919, 250 U.S. 123, 39 S.Ct. 407, 63 L.Ed. 889; United States v. Thompson, 1878, 98 U.S. 486, 25 L.Ed. 194. In asserting sovereign governmental rights, the United States is not bound by statutes of limitation unless Congress has clearly manifested such intention. United States v. Nashville, C. & St. L. Ry. Co., 1886, 118 U.S. 120, 6 S.Ct. 1006, 30 L.Ed. 81.

We agree with the District Judge that "[i]t is untenable that the provision of this Act may be said to relate back to the Trading with the Enemy Act. The two Acts stem from different parts of the Constitution. One is a war power and the other is under the commerce

clause. If Congress has the power to 'make rules' to limit itself in the exercise of war powers and does not do so, it is hard to conceive that it intended limitations of another Act to be placed on it as to when certain procedures must be accomplished."

This court, in a very similar situation in Societe Suisse Pour Valeurs De Metaux v. Cummings, 1938, 69 App.D.C. 154, 162, 99 F.2d 387, 395, certiorari denied Societe Suisse Pour Valeurs De Metaux v. Murphy, 1939, 306 U.S. 631, 59 S.Ct. 463, 83 L.Ed. 1033, had this to say on the subject:

> "We think there is no basis for the claim of laches on the part of the government. No rule is better established than that the United States are not bound by limitations or barred by laches where they are asserting a public right. * * * Here the United States are not seeking the return of money unlawfully paid 'as a mere conduit of title for private persons', as counsel suggest. The property and money delivered to [appellant] in 1921, was, in our opinion, enemy property, and it is settled that under the Trading with the Enemy Act enemy property after seizure belonged to the United States to be disposed of as they pleased."

We conclude that the defenses of the statute of limitations and laches are not available against the Attorney General in this case in his capacity as successor to the Alien Property Custodian under the Trading with the Enemy Act.

It accordingly follows that the judgment of the District Court was correct and should be affirmed.

We express no opinion as to the Government's contention that, under the circumstances, this action is a summary proceeding which cannot be delayed by defenses, and that appellant must be left to such judicial proceedings as it may bring under § 9(a) or § 32 of the Trading with the Enemy Act.

Affirmed.