UNITED STATES of America, Plaintiff,

v.

DE QUEEN AND EASTERN RAILROAD CO., Defendant.

Civ. A. No. 702.

United States District Court
W. D. Arkansas,
Texarkana Division.

Nov. 18, 1958.

**546**

Chas. W. Atkinson, U. S. Atty., Fort Smith, Ark., for plaintiff.

Elbert Cook, DeQueen, Ark., Watson, Ess, Marshall & Enggas, Kansas City, Mo., for defendant.

**JOHN E. MILLER, Chief Judge.**

This suit was filed by the United States of America on May 28, 1958, against the defendant railroad to recover alleged overcharges on shipments by the Commodity Credit Corporation in 1952 and 1953. The United States asserts that it is the real party in interest and claims jurisdiction of this court under Title 15 U.S.C.A. § 714b(c).

On June 25, 1958, the defendant railroad filed its motion to dismiss or, in the alternative, motion for summary judgment on the ground that under Title 49 U.S.C.A. § 16(3)(c), this action is barred. At the time the cause of action arose and at the time this suit was filed, that section provided:

"(c) For recovery of overcharges action at law shall be begun or complaint filed with the commission against carriers subject to this chapter within two years from the time the cause of action accrues, and not after, subject to subdivision (d) of this paragraph, except that if claim for the overcharge has been presented in writing to the carrier within the two-year period of limitation said period shall be extended to include six months from the time notice in writing is given by the carrier to the claimant of disallowance of the claim, or any part or parts thereof, specified in the notice."

Section 16(3) has since been amended by Public Law 85–762, 85th Congress, approved August 26, 1958, to change the period of limitation from two years to three years, and explicitly to bring the Government within its terms.

On July 21, 1958, the United States filed its motion for summary judgment denying that the statute of limitations is applicable to it. It appears that there are no questions of fact, and that the overcharges and amounts thereof are by affidavit of both parties admitted. The sole question before the court at this time is whether or not the United States is barred by the statute of limitations contained in the Interstate Commerce Act, 49 U.S.C.A. § 16(3)(c).

Both parties have submitted several briefs including copies of briefs submitted to another district court in which the same question is pending. From all of these briefs it appears that the defendant is relying primarily upon the language of Section 16(3)(c), and further upon the contention that after the expiration of two years no court has jurisdiction to entertain a suit for overcharges under this statute. The Government, on the other hand, insists that a statute of limitations does not apply to the sovereign unless it is made specific in that respect. It also asserts that under the Interstate Commerce Act carriers and shippers must be treated uniformly in all respects. It concludes that since the carrier in a suit against the Government is allowed six years in which to bring suit under the Tucker Act, Title 28 U.S.C.A. § 2401, that the Government must be allowed the same length of time in which to bring suit against the carrier notwithstanding the two-year limitation prescribed by Section 16(3)(c). In addition, both parties call the court's attention to the amendments to Section 16(3) and the legislative history lying behind those amendments. The Government interprets the amendments as showing a legislative recognition that the section, as it existed prior to the amendment, did not apply to the Government. The defendant railroad apparently feels that the new amendment is an attempt to make clear the requirements already laid down by Section 16(3).

■■ On its face the Act bars the Government's claims. The Government, however, contends for two established propositions which lead it to a conclusion that it is not barred. It is correct, as the Government states, that the Interstate Commerce Act is intended to impose its limitations with equality and uniformity on both carrier and shipper. This policy is found not in the express language of the Act itself but is merely implied. It has nevertheless been recognized as a guiding policy which must be followed. Midstate Horticultural Co. v. Pennsylvania R. Co., 1943, 320 U.S. 356, 64 S.Ct.

128, 88 L.Ed. 96. The Government's second proposition is also correct. It asserts that decisions of the Court of Claims and some Circuits have held that in suits against the Government by carriers, the carrier is not bound by the limitation established in the Interstate Commerce Act, but is bound only by the limitation imposed in the Tucker Act, 28 U.S.C.A. § 2401, which is a six-year rather than a two-year limitation. See Eastern Freight Ways v. United States, 2 Cir., 1958, 257 F.2d 703, and cases cited. So far as shown the Supreme Court has never passed upon this question, but, of the courts reaching it, they are agreed that the Tucker Act rather than the Commerce Act limitation controls. From these two premises the Government concludes that the two-year bar in the Commerce Act cannot apply to the Government, because to so apply that limitation would defeat the policy of the Commerce Act to treat carriers and shippers alike.

■ On its face the force of this argument is compelling, but at its base are unspoken assumptions which render it unacceptable. The Congressional policy of equality implied in the Interstate Commerce Act has been held inapplicable to the extent that carriers' claims against the Government are limited by another statute. The courts so holding have found a "unique position of the Government in its dealings with common carriers" and "cogent reasons" why the policy of equality between shippers and carriers does not apply when carriers claim against the Government. See Eastern Freight Ways v. United States, D.C.S.D. N.Y.1957, 155 F.Supp. 22, 25, and cases cited. One consideration in such holdings is that a contrary decision would place carriers under a burden not imposed on other claimants in suits against the Government. Cf. Seaboard Air Line R. Co. v. United States, 1949, 83 F.Supp. 1012, 113 Ct.Cl. 437. Thus courts so holding have found a policy of equality of claimants before the Government which stands on higher ground than the policy of the Commerce Act which calls for equality between shippers and carriers.

It is not necessary for this court to pass upon the correctness or incorrectness of such decisions. It is necessary to point out, however, that in making the decision that the six-year rather than the two-year statute is applicable in carriers' claims against the Government, those courts were faced with a choice between two statutes in which either choice created an inequality and in which one of two conflicting "policies"—whether real or fancied—was forced to give to the other. Absent legislative language indicating a choice, the decisions necessarily rest upon an expressed or implied weighing of the "policies" to be followed. The Government does not present such a situation here. It does not offer an alternative statute whose policy commands deference to it rather than to the Commerce Act.[1] It seeks instead to nullify the express words contained in Sec. 16(3)(c). Its position is bottomed ultimately upon the hidden premise that the policy of the Commerce Act for equality between shippers and carriers is to be weighed against the express language of the Act itself and when so weighed overrides that language. The Government does not offer a countervailing policy of another statute, the words of which command a different result. This is not a case of a conflict of two policies, acceptance of either of which will result in some inequality. Instead this case presents a claim that the policy implied in the Commerce Act is so weighty that the express commands of the Act itself must yield to that implied policy. When this unspoken premise is considered, the logic of the Government's argument falls on its own foundation. Neither the nature of judicial determination nor any of the briefs before the court places the court in a position to determine the weight of the "policy" contended for by the Government. At this point it might be well to recall that the "policy" of a legislative enactment is a guide to interpretation, and in that respect is use-ful and necessary, but the ethereal realm of policy must not become a fairyland in which courts may substitute their own ideas of what the policy should be for the everyday realities of express language. By attributing to the Congress the court's own concept of fairness or equity, courts may break away from their moorings to the more traditional solutions of legal reasoning to avoid what may seem an unjust result, and when a clear policy is present it may be served in this manner, but it should not be followed to the destruction of actual legislative language. The route the Government takes is somewhat anomalous. It originally contended that carriers must not be allowed six years in which to sue the Government under the Tucker Act because to do so would avoid the policy of uniformity which the Commerce Act commands. As the Government now points out, it has consistently lost those cases, because several courts have found a countervailing policy in the Tucker Act. The Government now says, in effect, that since courts have erred in not giving effect to this policy when the carrier sues the Government, they should follow the same course by refusing to give effect to the express language of the Commerce Act. But the fact that an exception may exist to the policy of equality in cases where the Tucker Act is involved, does not compel the inference proposed by the Government here that what it once asserted as an error must be compounded by ignoring a statute in favor of an implied policy of the same statute in order to return full circle and reach what, in the Government's opinion, is a just result. The net effect of the Government's position is that the court should judicially rewrite Sec. 16(3) to provide not only that it does not apply to transactions with the United States but also to provide positively that the Government shall have six years in which to sue a carrier. Even if this court could nullify the two-year limitation im-

---

1. The Government does not contend for the application of the six-year limitation imposed by the Commodity Credit Corporation Charter Act, 15 U.S.C.A. § 714b

(c). Since this suit is brought under the Interstate Commerce Act it is doubtful whether the Charter Act affects it in any event.

posed by Sec. 16(3)(c), it could certainly not enact positive law by substituting a six-year judicial limitation for the two-year limitation prescribed by statute.

Section 16(3)(c) provides for a two-year limitation on suits against carriers. In the absence of some positive law casting doubt on this provision, it must prevail over an implied policy. Therefore, the Government is barred by the statute of limitations unless its position as sovereign renders the statute inapplicable in this case.

For the proposition that statutes of limitation do not apply to the sovereign, the Government relies largely upon E. I. Du Pont de Nemours & Co. v. Davis, 1924, 264 U.S. 456, 44 S.Ct. 364, 68 L.Ed. 788; United States v. State of Minnesota, 1926, 270 U.S. 181, 196, 46 S.Ct. 298, 70 L.Ed. 539; Board of Commissioners of Jackson County, Kansas v. United States, 1939, 308 U.S. 343, 351, 60 S.Ct. 285, 84 L.Ed. 313; United States v. Summerlin, 1940, 310 U.S. 414, 415–416, 60 S.Ct. 1019, 84 L.Ed. 1283. In particular the United States asserts that the Du Pont case, supra, is controlling here. That case arose by virtue of federal operation of the railroads. The Director General of Railroads brought suit to recover demurrage charges accrued at Little Rock, Arkansas, during the year 1918. The defendant demurred on the ground that the statute of limitations contained in Section 16(3) barred the action. The wording of that section at that time was substantially similar to the present language involved here. The Court held that the Director General in operating the railroads was not a "carrier" under the act and, therefore, the statute of limitations had no application to him. After rendering the decision on this ground the Court added at page 462 of 264 U.S., at page 366 of 44 S.Ct. the following language, upon which the Government particularly relies:

"In taking over and operating the railroad systems of the country, the United States did so in its sovereign capacity, as a war measure, 'under a right in the nature of eminent domain,' North Carolina R. Co. v. Lee, 260 U.S. 16, 43 S.Ct. 2, 67 L.Ed. 104; Missouri Pacific R. Co. v. Ault, 256 U.S. 554, 41 S.Ct. 593, 65 L.Ed. 1087; Northern Pacific Ry. Co. v. State of North Dakota, 250 U.S. 135, 39 S.Ct. 502, 63 L.Ed. 897; In re Tidewater Coal Exchange, 2 Cir., 280 F. 648, 649; and it may not be held to have waived any sovereign right or privilege unless plainly so provided. Moneys and other property derived from the operation of the carriers during federal control, as we have seen, are the property of the United States. Sec. 12, 40 Stat. 457. An action by the Director General to recover upon a liability arising out of such control is an action on behalf of the United States in its governmental capacity, Chesapeake & Delaware Canal Co. v. United States, 250 U.S. 123, 126, 39 S.Ct. 407, 63 L.Ed. 889; In re Tidewater Coal Exchange, supra; and, therefore, is subject to no time limitation, in the absence of congressional enactment clearly imposing it. United States v. Nashville, C. & St. L. Ry. Co., 118 U.S. 120, 125, 6 S.Ct. 1006, 30 L.Ed. 81; United States v. Whited & Wheless, Ltd., 246 U.S. 552, 561, 38 S.Ct. 367, 62 L.Ed. 879. Statutes of limitation sought to be applied to bar rights of the government, must receive a strict construction in favor of the government. United States v. Whited & Wheless, Ltd., supra."

It appears that some limitation has been imposed upon the broad language just quoted by United States v. State of California, 1936, 297 U.S. 175, 56 S.Ct. 421, 80 L.Ed. 567, where the court concluded that the rule with respect to applicability of limitations to the Government was merely a "canon of construction." At page 186 of 297 U.S., at page 425 of 56 S.Ct. the court said:

"The presumption is an aid to consistent construction of statutes of the enacting sovereign when their

purpose is in doubt, but it does not require that the aim of a statute fairly to be inferred be disregarded because not explicitly stated."

In addition to the Du Pont case the Government cites as being most nearly in point Illinois Central Railroad v. Rogers, 1958, 102 U.S.App.D.C. 327, 253 F.2d 349, and Shutt v. United States, 5 Cir., 1954, 218 F.2d 10. In the Rogers case the court held that the Government's cause of action arose under the Trading with the Enemy Act, and not under the Interstate Commerce Act. The court therefore concluded that the limitations expressed in Sec. 16(3)(c) did not apply. It then went on to hold, relying upon the Du Pont case, supra, that in any event the statute of limitations in Sec. 16(3)(c) did not apply to the Government. In the Shutt case the same section was asserted as a defense to a suit by the United States and the defense held invalid for the same two reasons. The court said at page 12 of 218 F.2d:

"The action of the United States, in the nature of an action for money had and received, was for the simple restitution of the overcharges induced by defendant's unfounded claim and certificate. United States v. Borin, 5 Cir., 209 F.2d 145.

"For the same reason and upon the same authority, there is no merit in appellant's contention that the statutory limitation has barred the claim. Plaintiff did not invoke the statute, and, as sovereign, it is not subject in its general actions to the bar of limitation."

By virtue of these rulings the Government asserts that it is not bound by the limitation contained in Sec. 16(3)(c). The defendant's answer to this contention is that this particular statute is not merely a statute of repose in which the remedy is barred, but that it is a statute which bars the cause of action as well and that in accordance with several decisions of the Interstate Commerce Commission, after the period has run, there is no jurisdiction to grant relief. This conten-

tion is fully supported by the cases. In A. J. Phillips Co. v. Grand Trunk Western Ry. Co., 1915, 236 U.S. 662, at page 667, 35 S.Ct. 444, at page 446, 59 L.Ed. 774, the Court said:

"But that rule does not apply to a cause of action arising under a statute which indicates its purpose to prevent suits on delayed claims, by the provision that all complaints for damages should be filed within two years, *and not after*. [sic] Under such a statute the lapse of time not only bars the remedy, but destroys the liability * * *."

Moreover, this limitation is jurisdictional. In Louisville Cement Co. v. I. C. C., 1918, 246 U.S. 638, at page 642, 38 S.Ct. 408, at page 409, 62 L.Ed. 914, the court said:

"We agree with this conclusion of the Commission, that the two-year provision of the act is not a mere statute of limitation, but is jurisdictional,—is a limit set to the power of the Commission as distinguished from a rule of law for the guidance of it in reaching its conclusion * * *."

If these decisions are controlling here, the Government's position is no longer that of a sovereign claiming freedom from a limitation which is not clearly applied to it by the terms of a statute. Rather its position is that of a litigant asserting a cause of action which no longer exists in a court which no longer has jurisdiction. It is in the same position as was the Government in United States v. Rice, 1946, 327 U.S. 742, 66 S.Ct. 835, 90 L.Ed. 982, where the court considered the reviewability of an order of remand to a state court. The court expressly noted that the sovereignty of the United States gave it no rights which had not been conferred by statute or which had been abolished. The court said at page 749 of 327 U.S., at page 838 of 66 S.Ct.:

"To whatever extent the Government may be excluded from the operation of a statute in which it is not

named, cf. United States v. Stevenson, 215 U.S. 190, 197, 30 S.Ct. 35, 36, 54 L.Ed. 153 with United States v. State of California, 297 U.S. 175, 186, 56 S.Ct. 421, 425, 80 L.Ed. 567, it is clear that the United States can not assert, by virtue of its sovereignty, a right of appeal which no statute has conferred, or which, if conferred, has been abolished."

If the statute of limitations expressed in Sec. 16(3) applies at all to the cause of action asserted by the United States in this suit, it applies to abolish the cause of action and eliminate jurisdiction of this court, and if that is so, the Government gains nothing by virtue of its status as sovereign.

The holdings in Illinois Central Railroad v. Rogers, supra, and Shutt v. United States, supra, turn attention to the question of whether this cause of action arises under the Interstate Commerce Act so as to make Sec. 16(3) applicable, or whether, as suggested in the Shutt case, the action is based upon contract. In this respect the complaint does not specify its basis in law but merely asserts overpayments by the Government to the defendant on freight charges. However, in Midstate Horticultural Company v. Pennsylvania R. Co., 1943, 320 U.S. 356, 64 S.Ct. 128, 88 L.Ed. 96, the court eschewed the proposition that the limitations in Sec. 16(3) do not apply to a suit for overcharges where the suit is founded upon contract. The court said at pages 359–361 and 363 of 320 U.S., at pages 129–130 and 132 of 64 S.Ct.:

" * * * in this case, consistently with the pattern, the debate has moved back to whether the cause of action is one created by the statute or one arising from the common law, with the attributed consequence in the one case that the bar is absolute and invariable by any act of the parties, in the other that it may be waived by contract or otherwise. Petitioner urges that the carrier's common law right to collect transportation charges from the shipper, which was strictly contrac-

tual, no longer exists, but has been replaced with one prescribed by the [Interstate Commerce Commission] Act. This, it says, now fixes the character and dimensions of the carrier's recovery, including the time within which it may be had. Respondent however insists the Act has not superseded, but has merely modified its common law contractual right; and in this respect it asserts a distinction between cases like this one, in which the carrier seeks the full amount of the transportation charges and others in which the suit is for only a part of them or in which the shipper sues the carrier to recover excess charges paid or damages for the charging of unreasonable rates.

"We do not think the decision should turn on refinements over whether the residuum of freedom to contract which the Act leaves to the parties or the quantum of restriction it imposes constitutes the gist of the action. Origin of the right is not per se conclusive whether the limitation of time 'extinguishes' it or 'merely bars the remedy' with the accepted alternative consequences respecting waiver. Source is merely evidentiary, with other factors, of legislative intent whether the right shall be enforceable in any event after the prescribed time, which is the ultimate question. The test of creation may aid when origin is clear. It is not conclusive when the source is hybrid, as is true of the carrier's contract, which has become a complex or resultant of the former freedom of contract and statutory restrictions. It does not follow from the survival of the common law elements, as respondent maintains, that Congress did not intend the limitation to be absolute. And this seems impliedly conceded when the debate shifts, as it has to whether the policy of interstate commerce legislation contemplates the one result or the other. This is the controlling ques-

tion. Respecting it the consistent patterns of legislation followed in the Act and of judicial decision in treating problems of time limitation and related questions arising under it furnish the more persuasive indicia of Congress' intention.

\* \* \* \* \* \*

"With a single exception, Pennsylvania R. Co. v. Susquehanna Collieries Co., D.C., 23 F.2d 499, the federal courts have not decided squarely whether an agreement such as is presented here is valid. In that suit to recover demurrage charges the court sustained and gave effect to the contract. But we think this is contrary to the general course of decision which has construed the section and predecessor limitations."

This action, even though there may be some element of contract pleaded in the complaint, is, therefore, dependent at least in part upon the Interstate Commerce Act, and the limitations contained in that act are applicable to this cause of action.

The court is thus confronted on the one hand with the decision in the Du Pont case, supra, the dicta of which points to a conclusion that the Government is not bound by this statute, and on the other hand with the cases holding that its jurisdiction is at an end when the two-year statute of limitations has expired, and pointing to the conclusion that no cause of action exists on behalf of the Government. Notwithstanding the sweeping language in the Du Pont case, it cannot be made to stand for the proposition that the jurisdiction not otherwise available to the court is available when the Government is a party. It does not appear from the report of the decision that the jurisdictional question was raised, and certainly it was not considered by the court in its opinion. In any event such a proposition is explicitly negatived by the decision in United States v. Rice, supra, which held that regardless of the Government's extraordinary rights, its sovereignty gains it nothing where the cause

of action it asserts has been abolished. This is the case presented here. Moreover, the holding in the Du Pont case, strictly speaking, appears to be limited to a determination that the Director General of Railroads was not a "carrier." The language in that decision which reiterates the rule that limitations do not apply to the sovereign appears to be dicta which is unnecessary to the holding. Therefore, in view of the more recent cases, such as Midstate Horticultural Co. v. Pennsylvania R. Co., supra, which reaffirm the jurisdictional nature of Sec. 16(3), the Du Pont case is not determinative here, and it must be held that this court has no jurisdiction whether the suit is brought here by the Government or by a private party.

■ Both parties have cited Public Law 85–762 which amends Sec. 16(3), and provides that it "shall extend to and embrace all transportation of property or passengers for or on behalf of the United States in connection with any action brought before the Commission or any court by or against carriers subject to this part \* \* \*." Nothing in the amendatory act nor the legislative history accompanying it indicates that it is declaratory of prior law, or that it is a recognition of the correctness of the decisions upon which the Government relies. A later statute which is not declaratory in nature is not to be used for the purpose of construing a former act unless the amendatory act or its legislative history so indicates. Cf. United States v. Gillis, 1877, 95 U.S. 407, 415, 24 L.Ed. 503. The court therefore does not consider the amendatory act as pointing to a determination of this cause either in favor of the Government or in favor of the defendant railroad.

■ Since Title 49 U.S.C.A. § 16(3) (c), bars the cause of action after two years and more than two years have elapsed since the Government's cause of action accrued, and since that section is jurisdictional, the Government's motion for summary judgment must be denied and the defendant's motion to dismiss must be sustained for lack of jurisdiction.

Therefore, an order is being entered today denying the Government's motion for summary judgment, and sustaining the defendant's motion to dismiss and dismissing the complaint.