**UNITED STATES of America, Appellant,**

v.

**DE QUEEN AND EASTERN RAILROAD COMPANY, Appellee.**

**No. 16203.**

United States Court of Appeals
Eighth Circuit.

Nov. 12, 1959.

Rehearing Denied Dec. 8, 1959.

Howard E. Shapiro, Atty., Dept. of Justice, Washington, D. C. (George Cochran Doub, Asst. Atty. Gen., Charles W. Atkinson, U. S. Atty., Fort Smith, Ark., and Alan S. Rosenthal, Atty., Dept. of Justice, Washington, D. C., were with him on the brief), for appellant.

Melvin J. Spencer, Kansas City, Mo. (Elbert Cook, De Queen, Ark., Louis L. Poplinger, and Watson, Ess, Marshall & Enggas, Kansas City, Mo., were with him on the brief), for appellee.

Before SANBORN, WOODROUGH and VAN OOSTERHOUT, Circuit Judges.

SANBORN, Circuit Judge.

This is an appeal from a judgment dismissing the complaint of the United States in an action brought by it on May 25, 1958, to recover overcharges in freight rates collected by the defendant (appellee), a common carrier by rail, from the Commodity Credit Corporation on various lots of hay shipped into Arkansas between September 25, 1952, and January 29, 1953. The defendant was the delivering carrier, and the last overcharge was collected by it more than five years before this action was commenced. Jurisdiction is based upon Section 4(c) of the Commodity Credit Corporation Charter Act, 15 U.S.C.A. § 714b(c).

The defendant moved to dismiss the Government's complaint on the ground that it failed to state a claim upon which relief could be granted, in that the claim stated was barred by Section 16(3) (c) of the Interstate Commerce Act, § 16(3) (c) of Title 49 U.S.C.A., which, prior to its amendment on August 26, 1958, so far as pertinent provided:

"For recovery of overcharges action at law shall be begun or complaint filed with the commission [Interstate Commerce Commission] against carriers subject to this chapter within two years from the time the cause of action accrues, and not after, * * *."

The defendant moved, in the alternative, for a summary judgment upon the same ground.

The Government opposed the motion of the defendant and filed a cross-motion for a summary judgment.

The amount of the overcharges collected by the defendant from the Commodity Credit Corporation was admitted, and the sole question for decision was, and still is, whether the Government's action was barred by Section 16(3) (c). The District Court, in dismissing the Government's complaint, ruled, in effect, that that section applied to the Government as well as to other shippers, and not only barred its remedy but extinguished the defendant's liability. See 167 F.Supp. 545.

The contention of the Government is, in substance, that the two-year limitation imposed by § 16(3) (c), prior to its amendment, upon actions brought by shippers to recover overcharges from carriers, is not applicable where the Government or a Government instrumentality is the shipper, since statutes of limitation do not run against the Government unless Congress has clearly manifested its intent that they shall apply to it, and since the Government was required by Section 322 of the Transportation Act of 1940, 49 U.S.C.A. § 66, to pay freight bills upon presentation by a carrier and prior to audit, with a reservation of the right of the Government, unlimited as to time, to deduct the amount of any overpayment to a carrier "from any amount subsequently found to be due such carrier," and since in numerous other respects the Government in its dealings with rail carriers stands in a different situation than private shippers.

The defendant asserts that the Government's right of setoff was created by Section 322, and constituted merely a statutory extension of the right of recoupment, and did not give the Government a perpetual right of action for recovery of overcharges; that subsidiary corporations of the United States, such as Commodity Credit Corporation, performing essentially commercial functions, have only such sovereign immunities as are expressly conferred by Congress; that the Commodity Credit Corporation Charter Act manifests a congressional intent to subject the claims of that corporation to Section 16(3); and that neither that section nor the Interstate Commerce Act evidences any policy or congressional intent to immunize agencies of the United States from the limitations provided in the section or to permit discrimination in favor of the United States.

■ Reduced to its simplest terms, the situation, as we see it, is that the defendant has in its possession unearned Government funds which were paid to it by mistake, and which it has no legal right to retain unless § 16(3) (c) of Title 49 U.S.C.A., which, prior to its amendment, was not expressly made applicable to the Government, bars the recovery of these Government funds. Had the Government been, or become subsequently, indebted to the defendant, it could, by virtue of its right of setoff, which was recognized and reserved in § 322 of the Transportation Act of 1940, 49 U.S.C.A. § 66, have applied the overcharges in suit upon its indebtedness to the defendant. That the overcharges were collected from the Commodity Credit Corporation, an instrumentality of the Government, we think is not of consequence. See 15 U.S.C.A. §§ 713, 714. The Government, as the real party in interest, could unquestionably bring this action. Insurance Co. of North America v. United States, 4 Cir., 159 F.2d 699, 702 and cases cited; United States v. Kansas City Southern Railway Co., 8 Cir., 217 F.2d 763, 765–766. See also and compare: Chesapeake & Delaware Canal Co. v. United States, 250 U.S. 123, 126–127, 39 S.Ct. 407, 63 L.Ed. 889, and United States v. Summerlin, 310 U.S. 414, 416–417, 60 S.Ct. 1019, 84 L.Ed. 1283.

■ We cannot accept the view that, although the Government could recover by way of setoff, without limitation, overcharges from carriers to which it was or became indebted, it could not

after two years recover, by action, overcharges from carriers to which it was not indebted. It seems unreasonable to ascribe to Congress an intent to make the time within which such claims of the Government were to be collectible dependent upon whether it was or was not indebted to the carriers. In our opinion, the Government's right of setoff, recognized and reserved in § 322, was not a right created by that section. We are in accord with the following statement of the Court of Appeals for the First Circuit in the case of United States v. New York, New Haven & Hartford R. Co., 236 F.2d 101, 105:

> "Section 322 concludes with the words, 'but the right is hereby reserved to the United States Government to deduct the amount of any overpayment to any such carrier from any amount subsequently found to be due such carrier.' We suppose that this provision was inserted out of an abundance of caution, because the availability of a setoff by the United States need not depend upon specific statutory authorization. 'It is but the exercise of the common right, which belongs to every creditor, to apply the unappropriated moneys of his debtor, in his hands, in extinguishment of the debts due to him.' Gratiot v. United States, 1841, 15 Pet. 336, 370, 10 L.Ed. 759. See Wisconsin Central R. Co. v. United States, 1896, 164 U.S. 190, 206–210, 17 S.Ct. 45, 41 L.Ed. 399. The quoted language of § 322 reserves the right to the United States to offset 'the amount of any overpayment.' * * *"

While there was a reversal of that case by the Supreme Court, 355 U.S. 253, 78 S.Ct. 212, 2 L.Ed.2d 247, upon the question as to which party had the burden of proof, there was no criticism of the statement above quoted. At page 260 of 355 U.S., at page 216 of 78 S.Ct., the Supreme Court, referring to the legislative history of § 322, said:

> "The conclusion is inescapable from this history that the Congress

was desirous of aiding the railroads to secure prompt payment of their charges, but it is also clear that the Congress, and the railroads, contemplated that the Government's protection against overcharges available under the preaudit practice should not be diminished. The burden of the carriers to establish the correctness of their charges was to continue unabridged. The carriers were to be paid immediately upon submission of their bills but the carriers were in return promptly to refund overcharges when such charges were administratively determined. * * *"

We think it cannot be said that the protection of the Government against overcharges by carriers under the preaudit practice was not diminished if, after the enactment of § 322, it was unable, after the expiration of the period of limitation imposed by § 16(3)(c), to enforce by suit a claim for overcharges against a carrier to which the Government was not indebted, although it could enforce such a claim at any time by setoff against a carrier to which it was indebted.

■ "There is an old and well-known rule that statutes which in general terms divest pre-existing rights or privileges will not be applied to the sovereign without express words to that effect." United States v. United Mine Workers of America, 330 U.S. 258, 272, 67 S.Ct. 677, 686, 91 L.Ed. 884.

■ It has always been the rule that statutes of limitation do not apply to the United States in the absence of a clear and manifest congressional intent that they shall apply.

In the case of United States v. Nashville, Chattanooga & St. Louis Ry. Co., 118 U.S. 120, 125, 6 S.Ct. 1006, 1008, 30 L.Ed. 81, the Court said:

> "It is settled beyond doubt or controversy, upon the foundation of the great principle of public policy, applicable to all governments alike, which forbids that the public inter-

ests should be prejudiced by the negligence of the officers or agents to whose care they are confided, that the United States, asserting rights vested in them as a sovereign government, are not bound by any statute of limitations, unless congress has clearly manifested its intention that they should be so bound. Lindsey v. Miller's Lessee, 6 Pet. 666 [8 L.Ed. 538]; United States v. Knight, 14 Pet. 301, 315 [10 L.Ed. 465]; Gibson v. Chouteau, 13 Wall. 92 [20 L.Ed. 534]; United States v. Thompson, 98 U.S. 486 [25 L.Ed. 194]; Fink v. O'Neil, 106 U.S. 272, 281, 1 S.Ct. 325 [27 L.Ed. 196]."

"The principle that the United States are not bound by any statute of limitations, nor barred by any laches of their officers, however gross, in a suit brought by them as a sovereign government to enforce a public right, or to assert a public interest, is established past all controversy or doubt." United States v. Beebe, 127 U.S. 338, 344, 8 S.Ct. 1083, 1086, 32 L.Ed. 121. See also: United States v. Insley, 130 U.S. 263, 265–266, 9 S.Ct. 485, 32 L.Ed. 968; United States v. Des Moines Navigation and Railway Co., 142 U.S. 510, 538, 12 S.Ct. 308, 35 L.Ed. 1099; Stanley v. Schwalby, 147 U.S. 508, 514–515, 13 S.Ct. 418, 37 L.Ed. 259; United States v. American Bell Telephone Co., 159 U.S. 548, 554, 16 S.Ct. 69, 40 L.Ed. 255; United States v. American Bell Telephone Co., 167 U.S. 224, 265, 17 S.Ct. 809, 42 L.Ed. 144; Guarantee Title & Trust Co. v. Title Guaranty & Surety Co., 224 U.S. 152, 155, 32 S.Ct. 457, 56 L. Ed. 706; United States v. Whited & Wheless, 246 U.S. 552, 561–562, 38 S.Ct. 367, 62 L.Ed. 879; United States v. St. Paul, Minneapolis & Manitoba Ry. Co., 247 U.S. 310, 313–314, 38 S.Ct. 525, 62 L.Ed. 1130; E. I. Dupont de Nemours & Co. v. Davis, 264 U.S. 456, 462, 44 S.Ct. 364, 68 L.Ed. 788; Davis v. Corona Coal Co., 265 U.S. 219, 221–223, 44 S.Ct. 552, 68 L.Ed. 987; United States v. State of Minnesota, 270 U.S. 181, 195–196, 46 S.Ct. 298, 70 L.Ed. 539; Phillips v. Commissioner, 283 U.S. 589, 602–603, 51 S.

Ct. 608, 75 L.Ed. 1289; Guaranty Trust Co. of New York v. United States, 304 U.S. 126, 132–133, 58 S.Ct. 785, 82 L.Ed. 1224; United States v. Summerlin, 310 U.S. 414, 416, 60 S.Ct. 1019, 84 L.Ed. 1283.

In United States v. Wurts, 303 U.S. 414, 415–416, 58 S.Ct. 637, 638, 82 L.Ed. 932, the Court said:

"The Government by appropriate action can recover funds which its agents have wrongfully, erroneously, or illegally paid. 'No statute is necessary to authorize the United States to sue in such a case. The right to sue is independent of statute,' United States v. Bank of Metropolis, 15 Pet. 377, 401, 10 L.Ed. 774. * * * Ordinarily, recovery of Government funds, paid by mistake to one having no just right to keep the funds, is not barred by the passage of time. There is no contention here that respondent has any right to retain this refund erroneously paid by the Government. His defense is that the statutory bar prevents recovery. The Government's right to recover funds, from a person who received them by mistake and without right, is not barred unless Congress has 'clearly manifested its intention' to raise a statutory barrier."

"The statute of limitations does not ordinarily run against the United States and would not present a bar to a suit for the amount" of an overpayment or to a deduction of the amount of the overpayment from moneys owing, and "it matters not how long a time elapsed before the error in making the overpayment was discovered or how long the attempt to recover it was deferred." Grand Trunk Western Ry. Co. v. United States, 252 U.S. 112, 121, 40 S.Ct. 309, 312, 64 L.Ed. 484. See also, Shutt v. United States, 5 Cir., 218 F.2d 10.

██ It is our conclusion that the two-year limitation prescribed by § 16(3)(c) did not bar this action, since we find no adequate basis for holding that Congress

had clearly manifested its intention that that section should apply to an action by the Government to collect overcharges such as those in suit.[1]

The judgment appealed from is reversed, and the District Court is directed to enter summary judgment for the United States.

1. It should be noted that Congress, in amending Section 16(3) in 1958, made it expressly applicable to the United States, and limited the Government's right of action for the recovery of overcharges, either by action or setoff, to three years. The legislative history of the amendment appears in U.S.Code Congressional and Administrative News, 85th Congress, Second Session 1958, Vol. 2, pages 3924–3927. It indicates that the congressional intent to subject the Government to the two-year limitation of Section 16(3) (c) had not been made "clearly manifest" prior to the amendment.