**UNITED STATES of America,**
Plaintiff,

v.

**YALE TRANSPORT CORP., Defendant.**

United States District Court
S. D. New York.

June 8, 1960.

S. Hazard Gillespie, Jr., U. S. Atty., New York City, Sherman J. Saxl, Asst.

U. S. Atty., New York City, of counsel, for plaintiff, United States.

Austin, Burns, Appell & Smith, New York City, Joseph W. Burns, John P. Cuddahy, New York City, of counsel, for defendant, Yale Transport Corp.

WEINFELD, District Judge.

The Government commenced this action in March 1959 to recover alleged shipping overcharges made by the defendant, a motor vehicle common carrier,[1] for the transportation of Government property over a ten-year period, from August 1943 to December 1953.

The defendant moves for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure, 28 U.S.C.A., on the grounds that: (1) all claims subsequent to June 29, 1949, the date of enactment of 49 U.S.C.A. § 304a, are time-barred by the two-year limitation period provided therein; (2) all claims prior to August 14, 1951, were released by virtue of the discharge in bankruptcy of the carrier entered on that day; and (3) those claims which accrued prior to June 29, 1949, to the extent they were not released by the discharge in bankruptcy, are time-barred by the six-year statutes of limitation of New York and New Jersey. Civil Practice Act, § 48; N.J.S.A. 2A:14–1.

The Government contends that neither the two-year limitation period contained in 49 U.S.C.A. § 304a, nor the state acts apply to it.

As to the discharge in bankruptcy, the Government disputes that notice of the bankruptcy proceedings was duly given to the appropriate agency.

The issues to be considered can readily be narrowed. There is no substance to the defendant's contention that the Government is barred by state statutes of limitation from recovery of overcharges for transportation—claims which rest upon a federal statute.[2] The United States is not bound by state stat-

---

1. The defendant acquired all the stock of the carrier which had transported the property and had received the alleged overpayments.

2. 49 U.S.C.A. § 304a.

utes of limitation unless Congress provides it shall be,[3] and no such provision is suggested.

Thus, we proceed to consider whether section 304a(2) is applicable to the Government when it brings a suit for overcharges by a common carrier.

The Government, of course, relies upon the well-established doctrine, based upon public policy considerations, that the sovereign is not bound by statutes of limitation unless the congressional purpose that they shall apply is clear and undoubted.[4]

■■■ The question is whether Congress clearly manifested that the limitation provision in the act shall be binding upon the Government in an action brought by it against carriers to recover overcharges. I hold that it did not and that the limitation provision is inapplicable.

The precise issue was considered by the Court of Appeals for the Eighth Circuit in United States v. De Queen & Eastern R. Co., 1959, 271 F.2d 597, which reversed a district court ruling to the contrary.[5] There, as here, the Government brought an action to recover overcharges in freight rates collected by the defendant-carrier. Since the defendant in De Queen was a railroad, rather than a motor carrier, the statute of limitations in question was 49 U.S. C.A. § 16(3),[6] similar in all important respects to section 304a.[7] In holding that the Government was not bound by the two-year limitation,[8] the Eighth Circuit was much influenced by section 322 of the Transportation Act of 1940, under which the Government has the right to recover, without limitation, overcharges from carriers by deducting such amounts from "any amount subsequently found to be due such carrier."[9] The Court found it hard to reconcile this unlimited post-audit right with a two-year limitation on actions at law for the recovery of the same overcharges.

"We cannot accept the view that, although the Government could recover by way of setoff, without limitation, overcharges from carriers to which it was or became indebted, it could not after two years recover, by action, overcharges from carriers to which it was not indebted.

---

3. United States v. Summerlin, 1940, 310 U.S. 414, 416, 60 S.Ct. 1019, 84 L.Ed. 1283; Board of Commissioners of Jackson County v. United States, 1939, 308 U.S. 343, 351, 60 S.Ct. 285, 84 L.Ed. 313; Phillips v. Commissioner, 1931, 283 U.S. 589, 602–603, 51 S.Ct. 608, 75 L.Ed. 1289; United States v. State of Minnesota, 1926, 270 U.S. 181, 196, 46 S.Ct. 298, 70 L.Ed. 539; Davis v. Corona Coal Co., 1924, 265 U.S. 219, 222, 44 S.Ct. 552, 68 L.Ed. 987.

4. E.g., E. I. Dupont de Nemours & Co. v. Davis, 1924, 264 U.S. 456, 462, 44 S.Ct. 364, 68 L.Ed. 788.

5. D.C.W.D.Ark.1958, 167 F.Supp. 545.

6. It provides: "(c) For recovery of overcharges action at law shall be begun * * * against carriers subject to this chapter within two years from the time the cause of action accrues, and not after * * *."

7. The amendment adding this section was designed "to provide for uniformity under parts I, II, III, and IV of the Interstate Commerce Act, in the period of limitation within which actions at law may be brought for the recovery of undercharges or overcharges, by or against all common carriers and freight forwarders subject to the Interstate Commerce Act." H.R.Rep. No. 766, 81st Cong., 1st Sess. (June 8, 1949). Part I of the act dealing with railroads already contained a two-year limitation in section 16(3). The amendment added similar provisions to parts II (motor carriers), III (water carriers), and IV (freight forwarders). The Committee went on to say that in giving its approval it had "not attempted to determine that the existing limitations in part I do or do not apply to proceedings instituted by the United States but has left that question for determination judicially as appropriate cases may arise." Ibid.

8. The Interstate Commerce Commission had consistently held that the limitation of section 16(3) did apply to the United States. United States v. Director General, 80 I.C.C. 143, 150–151 (1923); United States v. Southern Ry., 286 I.C.C. 203, 204–205 (1952); War Materials Reparation Cases, 294 I.C.C. 5, 12 (1955).

9. 49 U.S.C.A. § 66.

It seems unreasonable to ascribe to Congress an intent to make the time within which such claims of the Government were to be collectible dependent upon whether it was or was not indebted to the carriers." [10]

This Court, for the same reasons, is persuaded that the conclusion that Congress did not intend that the Government was to be bound by the two-year limitation of section 304a is sound and should be followed.

The conclusion of an absence of such purpose is fortified by the fact that when Congress in 1958 amended sections 304a and 66 of Title 49, it specifically made the limitation provision applicable to the United States under both sections.[11]

The defendant makes the further argument that the Government by contract agreed to subject itself to the statute of limitation applicable to commercial carriers. This contention is based upon the Government bills of lading issued with the respective shipments and those issued by the carrier upon receipt of the merchandise, described as "uniform motor carrier straight domestic" bills of lading.

The Government bill of lading provided that:

"2. Unless otherwise specifically provided or otherwise stated hereon, this bill of lading is subject to the same rules and conditions as govern commercial shipments made on the usual forms provided therefor by the carrier."

The carrier's form provided:

"1.(a) The carrier * * * in possession * * * of the proper-ty herein described shall be liable as at common law for any loss thereof or damage thereto, except as hereinafter provided.

\* \* \* \* \* \*

"2.(b) As a condition precedent to recovery, claims must be filed in writing with the * * * carrier in possession of the property when the loss, damage, injury or delay occurred, within nine months after delivery of the property * * * or, in case of failure to make delivery, then within nine months after a reasonable time for delivery has elapsed, and suits shall be instituted against any carrier only within two years and one day from the day when notice in writing is given by the carrier to the claimant that the carrier has disallowed the claim·or any part or parts thereof specified in the notice."

These provisions clearly relate to actions to recover damages to merchandise or based upon nondelivery of shipments. The defendant concedes that neither provision concerns suits by a shipper to recover overcharges but it contends that such "a provision is unnecessary as it is covered by commercial law, which is embodied in the Interstate Commerce Act."

In the absence of any provision in either document with respect to an overcharge action which specifically imposed a two-year limitation period or incorporated by reference the limitation period of section 304a,[12] there is no basis upon which to infer the Government's consent to be bound.[13]

---

10. 271 F.2d at pages 599–600.

11. The amendment to section 304a extended the limitation period from two to three years and specifically stated that it should apply to the United States. 72 Stat. 860. The amendment to section 66 provided for a three-year limitation period on the Government's right to offset overcharges against amounts due the carrier. Id. at 860–861.

12. Cf. United States v. The South Star, D.C.S.D.N.Y.1953, 115 F.Supp. 102, af-firmed 2 Cir., 1954, 210 F.2d 44, in which the charterparty specifically incorporated section 3(6) of the Carriage Of Goods By Sea Act, 46 U.S.C.A. § 1303(6), which contains a one-year limitation on suits by the shipper.

13. The absence of such a specific provision at once distinguishes this case from those cited by the defendant in support of its position. East Texas Motor Freight Lines v. United States, 5 Cir., 1956, 239 F.2d 417; Seaboard Air Line

■ The defendant next urges that the carrier's discharge in bankruptcy on August 14, 1951, is a complete bar to its claims which accrued prior thereto. The claims for overcharges were not scheduled, and hence the discharge would not release them unless the Government "had notice or actual knowledge of the proceedings in bankruptcy." [14] The defendant contends that three notices of creditors' meetings mailed to the "United States of America, c/o Secretary of Treasury, Washington, D. C." and "Collector of Internal Revenue, Washington, D.C." constituted "notice" within the meaning of 11 U.S.C.A. § 35.

The schedules filed by the bankrupt listed taxes due to the United States of America as follows: "United States Collector of Internal Revenue, $10,824.10." The Government contends that these notices were directed to its tax collection agencies in connection with the unpaid taxes listed in the schedules; that the Department of the Treasury had no dealings with defendant or connection of any kind with the shipments of the merchandise, upon which the overcharge claims arose; and that under the circumstances, the mailing of the notices to the Treasury Department clearly related to the tax arrears and was not the "notice" contemplated by the statute.

Obligations due to the Government are entitled to priority in payment under the Bankruptcy Act. The taxes which the carrier did schedule were entitled to a first priority.[15] Such other debts as might have been due to the Government from the defendant were entitled to a subordinate priority.[16] Further, as to claims for overcharges, the Government was in a position, by reason of post-audit procedure, to offset such claims against any moneys which might have been due to the defendant. However, the defendant failed to schedule any such

R. R. Co. v. United States, 4 Cir., 1954, 216 F.2d 855; United States v. Chicago, R. I. & P. R. Co., 5 Cir., 1952, 200 F. 2d 263; United States v. Seaboard Air Line Ry., 4 Cir., 1927, 22 F.2d 113; Grace Line, Inc. v. United States, D.C.S.D.N.Y. 1956, 144 F.Supp. 548, affirmed 2 Cir., 1958, 255 F.2d 810; Delaware, L. & W. R. Co. v. United States, D.C.S.D.N.Y. 1954, 123 F.Supp. 579; United States v. The South Star, D.C.S.D.N.Y.1953, 115 F.Supp. 102, affirmed 2 Cir., 1954, 210 F.2d 44; United States v. Wessel, Duval & Co., D.C.S.D.N.Y.1953, 115 F.Supp. 678.

The foregoing relate either to damage or nondelivery claims and are not suits for the recovery of overcharges.

Moreover, it should be pointed out that even if such a specific provision were contained in the bills of lading, a serious issue would exist as to its validity, since its effect would be to accomplish by indirection that which Congress failed to do directly—that is, to impose a time-bar against the Government upon claims asserted by it for overcharges. It would pose a substantial question as to whether Government officials may, without specific congressional authority, surrender the sovereign right. The fact that officials are authorized to enter into agreements with carriers does not necessarily enlarge the scope of their authority so as to embrace power to bind the Government to limitation periods in statutes applicable to private litigants unless Congress has clearly expressed such an intent—a point which appears not to have been considered in a number of cases which hold that so long as the Government agency or agent had authority to enter into the contract, a provision therein limiting time to file a claim or bring suit is valid and binding on the Government just as it would be on any private party. See United States v. Chicago, R. I. & P. R. Co., 5 Cir., 1952, 200 F.2d 263; United States v. Seaboard Air Line Ry., 4 Cir., 1927, 22 F.2d 113; Grace Line, Inc. v. United States, D.C.S.D.N.Y.1956, 144 F.Supp. 548, 550, affirmed 2 Cir., 1958, 255 F.2d 810; Delaware, L. & W. R. Co. v. United States, D.C.S.D.N.Y. 1954, 123 F.Supp. 579. But cf. Raives v. Raives, 2 Cir., 1931, 54 F.2d 267, 269.

14. 11 U.S.C.A. § 35: "(a) A discharge in bankruptcy shall release a bankrupt from all of his provable debts, * * * except such as * * * (3) have not been duly scheduled in time for proof and allowance, with the name of the creditor, if known to the bankrupt, unless such creditor had notice or actual knowledge of the proceedings in bankruptcy * * *."

15. 11 U.S.C.A. § 104, sub. a (4).

16. Id. § 104, sub. a (5); 31 U.S.C.A. § 191. See 3 Collier, Bankruptcy Par. 64.-502 (14th Ed.).

claims, liquidated or otherwise, based upon the shipments it carried for the Government. As to these items, its dealings were exclusively with agencies of the Government having no direct concern with the collection of taxes. It performed the transportation services through various governmental departments or agencies, principally the Army; they were paid for by the General Accounting Office, hereafter referred to as GAO. Thus, the agencies, which made the shipments upon which the overcharge claims rest, were not listed in the schedules; no notice of proceedings was sent to them, nor was any sent to the GAO, although the overcharge claims were the subject of correspondence between the GAO and the defendant.

The GAO was established in 1921 and was to be "independent of the executive departments and under the control and direction of the Comptroller General * * *."[17] So it was in 1950 when the bankruptcy schedules were filed. The defendant was fully aware, as of the bankruptcy date, that post-audit by the Comptroller General might well subject it to liability for overcharges or permit deduction of claimed overpayments from any amounts due it. The Government was required by section 322 of the Transportation Act of 1940[18] to pay for transportation of Government property upon presentation of bills by the carrier prior to audit or settlement by the GAO, with the reservation to the Government, unlimited as to time,[19] to deduct any overpayment to the carrier from any amount subsequently found due such carrier. This, of course, always subjected the defendant to a contingent liability arising out of claimed overcharges. This right to make deductions from sums due the carrier rested exclusively with the Comptroller General, and not with the Secretary of the Treasury. Under all the circumstances, the notices of meetings sent to the latter, head of an executive arm of the Government, cannot be considered notice to the Comptroller General or the GAO, an agency "independent of the executive departments."

■■ The object of section 17 of the Bankruptcy Act[20] is to protect the creditor rather than the debtor.[21] When dealing with the vast departmental structure that makes up the Government of the United States, it is not, of course, incumbent upon the debtor to notify every department or agency, but notice of bankruptcy proceedings should be reasonably calculated to come to the attention of that branch of the Government familiar with the claims involved and which exercises functions with respect thereto—in this instance, the GAO. The Court therefore holds that the discharge in bankruptcy of the carrier on August 14, 1951, did not operate to release the Government claims.

Finally, the defendant makes a jurisdictional attack, contending that the determination of the action involves construction of tariffs and, accordingly, primary jurisdiction is with the Interstate Commerce Commission.

■ The claims upon which plaintiff seeks recovery involve two types of alleged overcharges: (1) unreasonable rates, which included the New York state surcharge, and (2) improper classification of goods. As to the former, which requires a determination of the reasonableness of tariffs, the Government concedes that this Court does not have jurisdiction and, accordingly, has abandoned that claim.

■ The remaining overcharge claims appear to revolve about what was actually contained in the shipments, and require the application of the tariff to

---

17. 31 U.S.C.A. § 41.

18. 49 U.S.C.A. § 66.

19. This section was amended in 1958 to provide a three-year limitation period. See note 11, supra.

20. 11 U.S.C.A. § 35.

21. *Birkett v. Columbia Bank*, 1904, 195 U.S. 345, 350, 25 S.Ct. 38, 49 L.Ed. 231.

the facts as ascertained. Under such circumstances, "The task to be performed is to determine the meaning of words of the tariff which were used in their ordinary sense and to apply that meaning to the undisputed facts. That operation [is] solely one of construction; and preliminary resort to the Commission [is], therefore, unnecessary." [22]

At this posture of the case there is no showing that the overcharge claims based upon improper classification of goods involve technical matters requiring the expertise of the Interstate Commerce Commission.[23] Should it eventuate at a later stage in the proceedings that the issues relate to technical matters, requiring the special competence of the Commission, the jurisdictional claim may again be advanced.[24]

▇ Apart from the foregoing, another contention advanced by the Government, which the defendant has not deigned to notice, also requires the denial of the motion for summary judgment. The Government asserts, without challenge, that subsequent to the date of the discharge in bankruptcy, the defendant, by an independent promise in writing, agreed to pay a specific portion of the overcharge claims in installments over a period of fifty months, and to pay the remaining claims within six months after they had been processed and presented for payment, the carrier reserving the right to protest claims which it deemed incorrect. If, in fact, there was an unqualified promise to pay the debt, the discharge in bankruptcy is no bar to the maintenance of this action to recover upon the original overcharge claims. The Government had the option of suing to recover upon them or upon the new promise.[25]

The motion for summary judgment is denied.

22. Great Northern Ry. Co. v. Merchants' Elevator Co., 1922, 259 U.S. 285, 294, 42 S.Ct. 477, 480, 66 L.Ed. 943.

23. Cf. United States v. Western Pacific R. R., 1956, 352 U.S. 59, 77 S.Ct. 161, 1 L.Ed.2d 126.

24. Such a question may be raised at any time. Hackner v. Guaranty Trust Co., 2 Cir., 117 F.2d 95, certiorari denied 1941, 313 U.S. 559, 61 S.Ct. 835, 85 L.Ed. 1520; Fed.R.Civ.P. 12(h) (2).

25. Cf. Herrington v. Davitt, 1917, 220 N.Y. 162, 115 N.E. 476, 1 A.L.R. 1700.